JANET DAVIS,                    )
                               )
          Plaintiff            )
                               )
     v.                        )    Case No. 4:07 cv 40
                               )
GENOVA PRODUCTS, INC. d/b/a    )
RENSSELAER PLASTICS CO., JEFF  )
MOLENAAR, and ED LYNCH,        )
                               )
          Defendants           )
******************************)
JEFF MOLENAAR,                 )
                               )
     Counter-Plaintiff         )
                               )
     v.                        )
                               )
JANET DAVIS,                   )
                               )
     Counter-Defendant         )

## OPINION AND ORDER

This matter is before the court on the Motion for Summary
Judgment [DE 40] filed by the defendants, Genova Products,
Incorporated, and Ed Lynch, on June 30, 2008, and the Motion to
Strike [DE 42] filed by the plaintiff, Janet Davis, on July 31,
2008.  For the reasons set forth below, the Motion to Strike is
**GRANTED IN PART** and **DENIED IN PART**, and the Motion for Summary
Judgment is **GRANTED** for the federal claims, and the state law
claims are **DISMISSED WITHOUT PREJUDICE.**

## Background

Genova Products, Incorporated, has a plant in Rensselaer,
Indiana, where it manufactures and distributes plumbing materials
including plastic PVC pipe.  Janet Davis began working at Genova
part-time as a production line worker in February 2000 and became

a full-time employee in May 2000.  (Dep. of Janet Davis, p. 14)
On May 5, 2000, Davis signed an acknowledgment of receipt of
Genova's employee handbook, which contains a Sexual Harassment
Policy.  (Deft. Mot. for Summ. J., Ex. A; Davis Dep. p. 18)  In
October 2000, Davis requested and received a transfer to the
first day shift, where she began working alongside Jeff
Molenaar.[1]

On February 28, 2005, Molenaar hit Davis in the chest with a
pipe, and Davis reported to her supervisor that it was an acci-
dent.  (Davis Dep. pp. 45-46)  Sometime the following summer,
Davis alleges that Molenaar touched her breast "at least four or
five times" and on one occasion touched her "vaginal area."
(Davis Dep. pp. 47, 50-51)  Davis was "freaked out" by the
inappropriate behavior, but she said nothing to Molenaar or any
supervisors for months afterward.  (Davis Dep. p. 51)  Sometime
that fall, she mentioned the vaginal touching incident to the
Assistant Plant Manager, Marty Shuey, but he offered no help, and
Davis concluded that "nothing would be done."  (Davis Dep. pp.
58-59)  Davis continued to work as before, being cautious not to
turn her back - literally - on Molenaar in an effort to avoid any
unwarranted touching.  (Davis Dep. p. 63)

On April 24, 2006, Davis was injured as a result of "pipe

---

[1]Davis apparently once had a run-in with Molenaar before they became co-
workers.  Davis tells of a confrontation she had while going to a tavern to
buy a six-pack of beer.  In a nontraditional attempt at courtship, she ex-
plains that he "grabbed a hold of my arm and he asked me if I wanted to go to
his house and drink beer and talk."  (Davis Dep. p. 28)  He was "a total
stranger" to her at the time, and he left her "with bruises" on her arm.  (*Id.*
at 29)

shoved into my butt, my back" by Molenaar.  (Davis Dep. p. 40)
The following interaction transpired:

> Specifically, Molenaar took lengths of both
> ten foot [by] two inch diameter and twenty
> foot [by] three inch diameter schedule 40 PVC
> pipe and rammed Ms. Davis in her rear while
> they were working together in a humping fash-
> ion.  Molenaar did this for most of the day
> and in the presence of other workers.  Occa-
> sionally while attempting to strike Ms. Davis
> in the rear with the pipe, Molenaar would
> "miss the target" and also strike Ms. Davis
> along her lower back.  While this happened,
> Ms. Davis felt a "pop" in her back. (internal
> citations omitted)

> (Pltf. Comp. p. 2)

Four days later, Davis informed her supervisor, Josh Barden, of
the injury, but she made no reference to any sexual nature of the
incident in that report.  (Deft. Ex. C)

However, on May 10, 2006, Davis completed an insurance form
notifyinging the insurance company that Molenaar "touched my
breast" and "shoved pipe into [her] butt" on several occasions in
2005-2006.  (Pltf. Ex. 2)  Davis also reported that Molenaar had
"slammed a hand bander into [her] son's butt hurting his tail-
bone." (Pltf. Ex. 2)  When the insurance company spotted the
unconventional entries on the form, it faxed the form to Genova,
prompting the shift supervisor, Ed Lynch, to meet with Davis
about the alleged harassment.

Lynch interviewed Davis, Molenaar, and two co-worker wit-
nesses to the incident.  Molenaar denied any improper conduct.
Lynch responded to the report by issuing a "very serious warning"
to Molenaar, which included the threat of severe disciplinary

action, including discharge, for any further problems, as well as advice on how not to sexually harass coworkers.[2] (Deft. Ex. F) Davis asserts that Lynch refused to assist her or to listen to her concerns, threatening that he would "play hardball" with information that he had on Davis if she persisted in complaining.[3] (Davis Dep. p. 88)

Davis claims that Molenaar continued to treat her horribly whenever they worked together. His attacks became more physically abusive, including "throwing boards at [her] face and sliding heavy skids of material weighing at least a thousand pounds" at her. (Aff. of Janet Davis, ¶ 24)

As a result of being struck with the pipe, Davis claims both physical and emotional problems. The back injury has left her "not being able to get up and move around and walk around and be normal and be able to run and do the things" she used to do, which has led to subsequent emotional problems. (Davis Dep. p. 158) Her back injury has caused physical symptoms which include numbness in her arms, legs, the back of her head, and sometimes, her lips. (Davis Dep. p. 160) She also complains of pain, "numbness down there," and problems urinating and having bowel movements, which she believes stem from the pipe incident and

---

[2]"My advise [sic] to you is to not make any type of physical contact with anyone at this plant. Do not have any conversations that could be construed as sexual. I would not tell any jokes that are sexual or kid around with anyone about sex." (Deft. Ex. F)

[3]Davis contends that Lynch knew she had failed a drug test when she had reported her injury for Worker's Compensation and had been arrested for marijuana possession. The drug charge is suggested to be related to Davis' decision not to report her injury until four days after it occurred.

"nerves."  (Davis Dep. p. 161)

Another of Molenaar's co-workers, Mike Owens, told Davis that he too had complained to Lynch about Molenaar "pinching and twisting" his nipples.  (Davis Dep. p. 69)  Davis testified at her deposition that she had witnessed Molenaar "trying to grab other men in their privates" and that he had, on more than one occasion, pulled down the pants of co-worker Rick "Fleabag" Clemens.  (Davis Dep. pp. 64, 119)  Pushing pipe into the rears of others was astonishingly common for Molenaar: "He basically did it to people when they were up at the bander."  (Davis Dep. p. 64)  Davis' workplace observations reveal a truth that is stranger than fiction:

> Q.   Altogether, if you had to in your mind guess how may men you heard complaints about, how many men complained that they had been grabbed in their privates or had pipe pushed into their butt by Mr. Molenaar, about how many men do you think made those sorts of complaints?
>
> * * *
>
> A.   . . . I'd say probably about six.
>
> Q.   About six men.  And how many women other than yourself did you see Mr. Molenaar push pipe into their buttocks or grab toward their private areas?
>
> * * *
>
> A.   . . . I'm not sure, but I know that it's been a few women, at least.
>
> * * *
>
> Q.   It sounds like his harassment was not even directed solely at women; is that correct?

* * *

A.    That is correct.

(Davis Dep. pp. 65-66)

On October 16, 2006, Davis requested a transfer to the night shift because the supervisor that she preferred, Barden, had been transferred to that shift.  (Davis Dep. p. 107; Deft. Ex. G)  No action was taken to fulfill this request until another fracas arose between Davis and Molenaar.  On October 28, 2006, Davis struck Molenaar in the chest with a pipe, eliciting a violent and angry reaction from Molenaar which included a blast of swearing and a physically threatening confrontation.  (Davis Dep. p. 111) Davis reported this incident, which lacked sexual elements, to her supervisor, who passed the information on to the Director of Plant Operations, Joe Pusateri.  Two days later, Lynch, Pusateri, and Davis met.  Pusateri explained that he was aware of the May 2006 complaint lodged by Davis and urged Davis to speak to him directly about any future altercations.  (Davis Dep. p. 117) Davis felt that Pusateri listened to her and was sympathetic at this meeting.  Upon learning that Davis had a transfer request on file, Pusateri immediately granted the request, which separated Davis from Molenaar.  Though Davis requested this shift change, she later complained that the work assignment consisted of "work like sweeping, cleaning, and scraping up grease."  (Davis Aff. ¶ 30)

Over three months later, Davis filed charges for the Molenaar harassment with the Equal Employment Opportunity Commission.

(Deft. Ex. H)  Shortly thereafter, in March of 2007, three female employees made allegations of sexual harassment concerning Molenaar's behavior toward them, and Molenaar immediately was terminated based upon the warning given the previous May.[4] (Deft. Ex. I)  On May 7, 2007, Davis stopped working for Genova due to the injuries caused by the "pipe in the rear" incident with Molenaar the previous year, received Worker's Compensation for the injury, and has not been employed since that time. (Davis Dep. pp. 18) Davis filed her Complaint in this cause of action on July 30, 2008, claiming four counts:  (I) Title VII discrimination resulting from a hostile work environment and a retaliatory adverse employment action; (II) assault and battery as to Molenaar; (III) intentional infliction of emotional distress ("IIED") as to Molenaar and Lynch; and (IV) negligence, recklessness, and intentional harm as to Genova for failure in supervision and retention of Molenaar.  (Pltf. Comp.)

The Motion for Summary Judgment was filed by Genova and Lynch, removing all charges against Molenaar personally from the ensuing discussion.  Likewise, through briefing Davis has chosen to abandon Count IV asserting corporate negligence in supervision and retention.  Presently, this court needs only to address the claims of Count I based on Title VII.

---

[4]Lynch's summary of the women's complaints includes allegations of Molenaar being "rough" with them when they moved pipe together, using bad language, looking down their shirts, telling them to pull their pants down, and accusing them of eating cat meat.

## Discussion

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *See* ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); ***Lawrence v. Kenosha County***, 391 F.3d 837, 841 (7th Cir. 2004); ***Branham v. Snow***, 392 F.3d 896, 901 (7th Cir. 2004); ***Windle v. City of Marion, Indiana***, 321 F.3d 658, 660-61 (7th Cir. 2003), *cert. denied*, 540 U.S. 873, 124 S.Ct. 873, 157 L.Ed.2d 133 (2003).  The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. ***Adickes v. S.H. Kress & Company***, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); ***Lawrence***, 391 F.3d at 841.  A fact is material if it is outcome determinative under applicable law. ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); ***Ballance v. City of Springfield, Illinois Police Department***, 424 F.3d 614, 616 (7th Cir. 2005); ***Hottenroth v. Village of Slinger***, 388 F.3d 1015, 1027 (7th Cir. 2004); ***Palmer v. Marion County***, 327 F.3d 588, 592 (7th Cir. 2003).  Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts. ***Spiegula v. Hull***, 371 F.3d 928, 935 (7th Cir. 2004); ***Hines v. British Steel Corporation***, 907 F.2d 726, 728 (7th

8

Cir. 1990). Finally, summary judgment "will not be defeated simply because motive or intent are involved." ***Roger v. Yellow Freight Systems, Inc.***, 21 F.3d 146, 148 (7th Cir. 1994). *See also **Miller v. Borden, Inc.**,* 168 F.3d 308, 312 (7th Cir. 1999); ***Plair v E.J. Brach & Sons, Inc.***, 105 F.3d 343, 346 (7th Cir. 1997); ***United Association of Black Landscapers v. City of Milwaukee***, 916 F.2d 1261, 1268 (7th Cir. 1990).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.
>
> ***Anderson***, 477 U.S. at 250, 106 S.Ct. at 2511

*See also **Reeves v. Sanderson Plumbing Prods., Inc.***, 530 U.S. 133, 149-151, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105, 120-122 (2000) (setting out the standard for a directed verdict); ***Celotex Corp.***, 477 U.S. at 322-23, 106 S.Ct. at 2553; ***Branham***, 392 F.3d at 901; ***Lawrence***, 391 F.3d at 841; ***Hottenroth***, 388 F.3d at 1027 (stating that a genuine issue is one on which "a reasonable fact finder

could find for the nonmoving party"); **Schuster v. Lucent Technol-
ogies, Inc.**, 327 F.3d 569, 573 (7th Cir. 2003)(stating that a
genuine issue exists and summary judgment is inappropriate if
there is sufficient evidence for a jury to return a verdict for
the nonmoving party).

Davis has filed a Motion to Strike which addresses one
exhibit and five statements offered by the defendants within the
Motion for Summary Judgment.  The exhibit, Exhibit E, is a "Note
to File" composed by Lynch after Davis filed her discrimination
charge with the EEOC.  This note summarized his recollections of
the problems between Davis and Molenaar the previous year and
included reports and impressions he recalled from witnesses he
had interviewed at the time of the pipe-in-the-rear incident.
The other statements within the motion are contested for lack of
adequate factual support.

To support a motion for summary judgment, an affidavit  may
not be based upon "self-serving statements . . . without factual
support in the record."  **Thanongsinh v. Board of Education**, 462
F.3d 762, 781 (7th Cir. 2006)(*quoting* **Butts v. Aurora Health
Care, Inc.**, 387 F.3d 921, 925 (7th Cir. 2004)).  Rather, Rule
56(e) requires that an affidavit "shall be made on personal
knowledge, set forth facts as would be admissible in evidence,
and shall show affirmatively that the affiant is competent to
testify to the matters stated therein."  The court may consider
any evidence that would be admissible at trial.  **Stinnett v. Iron
Works Gym/Executive Health SPA, Inc.**, 301 F.3d 610, 613 (7th Cir.

2002).  Though the evidence need not be admissible in form, it
must be admissible in content.  ***Goshert Enterprises, Inc. v.
Silveus Ins. Group, Inc.***, 2006 WL 1195197 at *2 (N.D. Ind. 2006)
(*citing **Stinnett***, 301 F.3d at 613).  To be admissible at trial,
evidence must be authenticated, requiring "authentication or
identification as a condition precedent to admissibility" which
is "satisfied by evidence sufficient to support a finding that
the matter in question is what its proponent claims."  Federal
Rule of Evidence 901(a).  Such authentication relates to whether
the evidence originates from the alleged source.  *See **Goshert
Enterprises***, 2006 WL 1195197 at *2 (differentiating between
authentication and vouching for accuracy of evidence via affida-
vit).

Here, the exhibit offered by Genova, Lynch's summary of the
events and investigation the previous year, fails to meet the
standard of admissibility for both its form and its content.  The
document is not authenticated as a reliable source of evidence
and is not a sworn affidavit.  Davis is also correct in the
assertion that the document contains hearsay statements which are
inadmissible.  *See **Gross v. White***, 173 Fed.Appx. 484, 487 (7th
Cir. 2006)(finding that written hearsay in a memorandum that
declared what other employees reported is inadmissible in summary
judgment proceedings to the same extent that it is inadmissible
at trial).  As such, the Motion to Strike as to this exhibit is
**GRANTED**, and Exhibit E is stricken.  Likewise, the statements in
the Motion for Summary Judgment relying on Exhibit E for support

are also stricken.

One of the statements Davis requests to strike concerns mention of a drug arrest in a footnote. Although Genova's motion failed to supply the factual basis for this allegation, it offered the relevant pages of Davis' deposition to cure this defect when it responded to the Motion to Strike. However, whether supported by fact or not, the mention of Davis' prior drug use is irrelevant to the factors considered here to determine whether a hostile work environment existed for Davis or whether her new shift assignment was the result of retaliation. The court has the ability to sift through the proffered evidence and determine which evidence is worth considering. Because the statements are irrelevant, the motion to strike is denied as moot. Likewise, the statement that "Davis never complained to Genova about alleged sexual harassment by Molenaar or anyone else" after May 2006 is irrelevant: if a single incident is severe enough, there is no need to explore pervasiveness. The statement concerning Davis' ability to return to work also is irrelevant to the factors to be discussed below. As to these three statements, the Motion to Strike is **DENIED AS MOOT.**

Finally, the statement that "Davis admits that neither Genova or Lynch subjected her to a discriminatory adverse employment action" transforms a statement that Davis made in her deposition - though the defendants fail to cite where the court can locate this statement - into a legal conclusion. It is not for the court and the plaintiff to draw a legal conclusion from a

statement.  Because the defendants have not placed this statement in context, the court will not treat Davis' comment as an admission.

Therefore, the Motion to Strike is **GRANTED IN PART** as to Exhibit E, the statement relying on that exhibit, and any reference to Davis' denial of an adverse employment action.  The Motion to Strike is **DENIED IN PART** as to all other statements which are irrelevant to the court's determination of summary judgment to follow.

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]"  42 U.S.C. §2000e-2(a)(1).  This statute "prohibits an employer from requiring people to work in a discriminatorily hostile or abusive environment."  ***Wyninger v. New Venture Gear, Inc.***, 361 F.3d 965, 975 (7th Cir. 2004)(*quoting* ***Shanoff v. Ill. Dep't of Human Servs.***, 258 F.3d 696, 701 (7th Cir. 2001)(*quoting* ***Harris v. Forklift Sys., Inc.***, 510 U.S. 17, 21, 114 S.Ct. 367, 1126 L.Ed.2d 295(1993)).  The statute's purpose is the prevention of "disparate treatment of men and women in employment."  ***Meritor Savings Bank v. Vinson***, 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)(*quoting* ***Los Angeles Dept. of Water and Power v. Manhart***, 435 U.S. 702, 707, n.13, 98 S.Ct. 1370, 1375, n.13, 55 L.Ed.2d 657 (1978)).  To establish a prima facie case of sexual harassment, Davis must show that 1)

she was subjected to unwelcome harassment, 2) the harassment was based on her sex, 3) the harassment was sufficiently severe or pervasive so as to alter the condition of her employment and create a hostile or abusive atmosphere, and 4) there is a basis for employer liability. *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 940 (7th Cir. 2007)(*citing Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354-55 (7th Cir. 2002)).

Thus, the "touchstone of Title VII is [] discrimination or disparate treatment" because of sex. *Holman v. State of Indiana*, 211 F.3d 399, 402-03 (7th Cir. 2000)(*citing Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). "The critical issue . . . is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Oncale*, 523 U.S. at 80, 118 S.Ct. at 1002 (*quoting Harris*, 510 U.S. at 25, 114 S.Ct. at 304 (Ginsburg, J., concurring)). Thus, the simple fact that a victim is female does not satisfy the requirement that the harassment she experienced is based on her sex. *See Herron v. Daimlerchrysler Corporation*, 388 F.3d 293, 303 (7th Cir. 2004)(finding that the plaintiff's membership in a protected class "does not transform" harassment related to him into harassment related to his race).

If discriminatory treatment exists, a complainant must also show that the harassment was both subjectively and objectively "so severe or pervasive as to alter the conditions of employment and create an abusive working environment." *Hilt-Dyson v. City*

*of Chicago*, 282 F.3d 456, 462-63 (7th Cir. 2002)(*quoting Faragher v. City of Boca Raton*, 524 U.S. 775, 786, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)). To determine if the environment was objectively hostile, "a court must consider all of the circumstances, including the frequency and severity of conduct, whether it is threatening and/or humiliating or merely offensive, and whether the harassment unreasonably interferes with an employee's work." *Wyninger*, 361 F.3d at 975-76 (*citing Hilt-Dyson*, 282 F.3d at 463; *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 693 (7th Cir. 2001)). *See also Smith v. Northeastern Illinois University*, 388 F.3d 559, 566 (7th Cir. 2004)(reciting same).

In addition to establishing that her co-worker's harassment was based on sex and was severe or pervasive, Davis must establish employer liability by demonstrating that Genova was negligent. *Wyninger*, 361 F.3d at 976 (*citing Longstreet v. Ill. Dep't of Corr.*, 276 F.3d 379, 381 (7th Cir. 2002)). An employer only is liable "if the employer knew or should have known about the coworker's acts of harassment and fails to take appropriate remedial action." *Berry v. Delta Airlines,* **Inc.**, 260 F.3d 803, 811 (7th Cir. 2001). Remedial action is appropriate if it is prompt and reasonably calculated to end the harassment under the particular circumstances of the case, although the employer's liability does not hinge on the actual cessation of harassment. *Berry*, 260 F.3d at 811; *Saxton v. American Telephone and Telegraph Company*, 10 F.3d 526, 536 (7th Cir. 1993). In addition, the victim's beliefs as to what constitutes an appropriate

response have no bearing on the negligence analysis. *See **Carde-nas v. Frito-Lay, Inc.***, 2002 WL 32357082 at *7 (W.D. Wis. Sept. 30, 2002) ("Plaintiff might disagree with how certain aspects of the investigation and response were handled, but . . . this is legally irrelevant."); ***Motley v. Tractor Supply Company***, 32 F.Supp.2d 1026, 1050-51 (S.D. Ind. 1998)("Just because an employee expected more from the employer, or a different response, does not mean that the employer failed to take appropriate remedial action, once it was on notice of the problem.").

Although Davis arguably was subjected to unwelcome and severe harassment based upon the single pipe-in-the-rear incident which involved a physical injury, the court need not address these factors because Molenaar's harassment did not occur "because of sex." Genova argues that Molenaar is an "equal opportunity harasser" because of his nefarious actions directed towards many of his co-workers. *See **Holman v. Ind. Dept. of Transp.***, 211 F.3d 399, 404 (7th Cir. 2000)("We do not think [] that it is anomalous for a Title VII remedy to be precluded when *both* sexes are treated badly." (emphasis in original))(affirming the Seventh Circuit's refusal to recognize Title VII sexual harassment claims in the case of the equal opportunity harasser).

In ***Kampmier***, an employee's bad behavior was aimed at both men and women, yet the Seventh Circuit found the "because of sex" factor satisfied because the harassment endured by the female plaintiff was "far more severe and prevalent" than that directed towards her male counterparts. ***Kampmier***, 472 F.3d at 940. Here,

however, Molenaar applied the identical behavior to both men and
women: his proclivity to jab co-workers whenever the opportunity
presented itself was attested to by Davis herself. The fact that
Davis suffered a back injury from the same assaultive behavior
does not distinguish the behavior aimed at her as uniquely due to
her gender. Davis recounted the pinching and twisting of Owens'
nipples and the pulling down of Fleabag's pants, both occurrences
equalling or perhaps surpassing in sexually-charged severity her
own experiences with Molenaar. Davis was not "exposed to disad-
vantageous terms or conditions of employment to which members of
the other sex are not exposed" as mandated by *Oncale*. 523 U.S.
at 80, 118 S.Ct. at 1002. Thus, Molenaar's conduct towards Davis
fails to fulfill the "because of sex" factor necessary for a
Title VII hostile work environment claim.

Davis also argues that Genova retaliated against her with
the job assignments given to her after her shift change was
implemented. Unlawful retaliation in violation of Title VII
occurs "when an employer takes actions that discriminate against
an employee because she has opposed a practice that Title VII
forbids." *Kampmier*, 472 F.3d at 939 (internal quotations omit-
ted)(*citing Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S.
53, 59, 126 S.Ct. 2405, 2410, 165 L.Ed.2d 345 (2006)). An
employer effectively retaliates against an employee "by taking
actions not directly related to [] employment or by causing []
harm outside the workplace." *Burlington N.*, 548 U.S. at 63, 126
S.Ct. at 2412. Davis has two ways of proving retaliation:

directly or indirectly. ***Kampmier***, 472 F.3d at 939. Davis has presented no direct evidence that her shift reassignment was retaliatory, and the fact that the shift reassignment occurred after her complaint is insufficient proof that it was a result of her complaint. This is especially true since the reassignment occurred months after her initial harassment complaint and was the result of her own request of shift change almost two weeks beforehand. *See **Wyninger***, 361 F.3d at 981 (finding that timing alone is not circumstantial evidence enough to establish a retaliation claim through the direct method).

To prove retaliation under the indirect method, "a plaintiff must show that after filing the complaint of discrimination only she, and not any similarly situated employee who did not file a charge, was subjected to an adverse employment action even though she was performing her job in a satisfactory manner." ***Kampmier***, 472 F.3d at 940 (*citing **Stone v. City of Indianapolis***, 281 F.3d 640, 644 (7th Cir. 2002)). A job reassignment also can be an adverse employment action if it includes "a significant change in employment status" such as "reassignment with significantly different responsibilities." ***Bell v. EPA***, 232 F.3d 546, 554 (7th Cir. 2000)(*quoting **Burlington Industries, Inc. v. Ellerth***, 524 U.S. 742, 761, 118 S.Ct. 2257, 2268, 141 L.Ed.2d 633 (1998)).

Davis' argument that the job reassignment was a retaliatory action is extremely weak. First, she does not offer any similarly situated employees for comparison. Second, "[n]ot everything that makes an employee unhappy is actionable." ***Hilt-Dyson,***

282 F.3d at 466 (*quoting **Smart v. Ball State University***, 89 F.3d 437, 441 (7th Cir. 1996)).  The job responsibilities for either shift involved physical labor.  Sweeping and cleaning are not "significantly different responsibilities" from bundling and moving PVC pipes, and Davis has not mentioned any other changes in areas such as pay, benefits, or title.  *See, e.g., **Moser v. Indiana Dept. of Corrections***, 406 F.3d 895, 904 (7th Cir. 2005) (finding transfer that does not change title, salary or benefit is not an adverse employment action due to diminished importance, challenge, and variety of duties); ***Herron***, 388 F.3d at 301 (finding transfers without reductions in pay or status are not adverse employment actions); ***Quantock v. Shared Marketing Services, Inc.***, 312 F.3d 899, 903 n.1 (7th Cir. 2002)(finding that a change in job responsibilities alone, rather than a significant diminishment of material responsibilities, does not constitute an adverse employment action); ***Grube v. Lau Industries, Inc.***, 257 F.3d 723, 728 (7th Cir. 2001)(finding shift change of employee who had spent over 20 years on first shift does not constitute adverse employment action); ***Spearman v. Ford Motor Co.***, 231 F.3d 1080, 1086 (7th Cir. 2000)(finding that the assignment of window washing and trash removal duties was not significantly different from utility worker duties and was not "degrading and punitive").  In addition, Genova is correct in its argument that even if Davis succeeded in proving her prima facie case of retaliation, Genova has a legitimate nonretaliatory explanation for the job reassignment:  Davis requested the transfer.

19

Because Davis cannot show that she was victim to an adverse employment action unique from a similarly situated co-worker, her claim of retaliation in violation of Title VII fails. As a result of the dismissal of all of Davis' federal claims for which original jurisdiction exists, this court will not address the pendent state law claims. *See **Golden Years Homestead, Inc. v. Buckland***, ___ F.3d ___, 2009 WL 396448, at *4 (7th Cir. Feb. 19, 2009) (discussing the general rule in this circuit that when the federal claim drops out before trial, the federal district court should relinquish jurisdiction over the supplemental claim); ***Hansen v. Bd. of Trustees of Hamilton Southeastern School Corp.***, 551 F.3d 599, 608 (7th Cir. 2008) ("The district court has broad discretion in deciding whether to retain supplemental claims.") (*citing **Van Harken v. City of Chicago***, 103 F.3d 1346, 1354 (7th Cir. 1997)); ***Wright v. Associated Ins. Companies, Inc.***, 29 F.3d 1244, 1251 (7th Cir. 1994) (explaining the general rule under 28 U.S.C. §1367(c)(3) as well as the exceptions, none of which apply here)(*citing **United Mine Workers of America v. Gibbs***, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)).

———————————————

For the reasons discussed above, the Motion to Strike [DE 42] filed by the plaintiff, Janet Davis, on July 31, 2008, is **GRANTED IN PART** as to Exhibit E, the statement relying on that exhibit, and any reference to Davis' denial of an adverse employment action, and **DENIED IN PART** as to the other statements which are irrelevant to the court's determination of summary judgment.

The Motion for Summary Judgment [DE 40] filed by the defendants, Genova Products and Ed Lynch, on June 30, 2008, is **GRANTED** for the claims under Title VII.  There being no surviving federal claim, all remaining state law claims are **DISMISSED WITHOUT PREJUDICE.**

Entered this 3rd day of March, 2009

s/ Andrew P. Rodovich
United States Magistrate Judge